IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

DAVID ARMATO,                              )
                                           )
                      Plaintiff,           )
      -vs-                                  )          No. 11-3023
                                           )
RANDY GROUNDS, MICHELE                      )
LITTLEJOHN, GLENN JACKSON,                  )
and DION DIXON,                             )
                      Defendant.            )

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Now come Defendants, RANDY GROUNDS, MICHELE LITTLEJOHN, DION DIXON,

EDWARD HUNTLEY, and GLENN JACKSON, by and through their counsel, Lisa Madigan,

Attorney General for the State of Illinois, and hereby file the instant Memorandum of Law in Support

of their Motion for Summary Judgment, stating as follows:

**INTRODUCTION**

Plaintiff, David Armato, brings the instant action pursuant to 42 U.S.C.§1983 alleging

violations of his Eighth and Fourteenth Amendment rights while incarcerated at Robinson

Correctional Center.  Specifically, Plaintiff alleges he was detained by the Illinois Department of

Corrections in violation of the Eighth Amendment and held without due process in violation of the

Fourteenth Amendment.  Plaintiff also brings a pendent state law claim for false imprisonment.

Defendants move for summary judgment on the following grounds: First, Plaintiff's pendent

state law claims are barred by sovereign immunity.  Second, the amended sentencing orders were

void and therefore a complete nullity and without legal effect.  Third, Defendants Grounds and

Dixon lack the requisite personal involvement for liability under 42 U.S.C. §1983.  Fourth,

Defendants did not act with deliberate indifference to Plaintiff's extended incarceration.  Fifth,

Defendants are entitled to qualified immunity.  Sixth, Plaintiff's Fourteenth Amendment claim fails because he had access to post deprivation remedies.

## UNDISPUTED MATERIAL FACTS

## FACTS REGARDING PLAINTIFF'S SENTENCE CALCULATION

1.      On March 6, 2006, in the Circuit Court of Lake County, Illinois, Plaintiff was sentenced to 10 years for the statutory offense of theft in case 05CF1661.  (Defs.' Ex. A, Pltff's Sentencing Order).

2.      On March 6, 2006, Plaintiff was also sentenced to 10 years for the statutory offense of theft in case 05CF5015.  (Defs.' Ex. B, Pltff's Sentencing Order).

3.      The Court ordered that the sentences in 05CF1661 and 05CF5015 run concurrently. (Defs.' Ex. A & B, Sentencing Orders).

4.      Plaintiff's sentence was originally calculated at the reception center for the Illinois Department of Corrections.  (Defs.' Ex. C, Littlejohn Depo pg 9 ln 12-15).

5.      The reception center calculated the Plaintiff's outdate as May 9, 2010, by using a custody date of May 9, 2005.  (Defs.' Ex. C, Littlejohn Depo pg 10-11).

6.      Plaintiff arrived at Robinson Correctional Center on November 28, 2007. (Defs.' Ex. C, Littlejohn Depo pg 9 ln 12-15).

7.      An offender's sentence is recalculated upon transferring to a new facility within the Illinois Department of Corrections.  (Defs.' Ex. C, Littlejohn Depo pg 8-9).

8.      Plaintiff's sentence was recalculated at Robinson Correctional Center on August 15, 2008, by Vicky Bennett.  (Defs.' Ex. C, Littlejohn Depo pg 17-18 & Depo Ex. 3).  T

9.     The recalculation by Vicky Bennett adjusted the Plaintiff's outdate to November 9, 2009; this outdate reflected additional good time received while incarcerated.  (Defs.' Ex. C, Littlejohn Depo Ex. 3).

10.     In September 2009, Defendant Littlejohn started  a  pre-release checklist in preparation of Plaintiff's November release date.  (Defs.' Ex. C, Littlejohn Depo pg 51).

11.     Defendant Littlejohn noticed there was an error in the jail verification that was being used to provide the Plaintiff credit for time served.  (Defs.' Ex. C, Littlejohn Depo pg 25-26, 51).

12.     The jail verification was incorrect because it listed a custody date of May 9, 2005, but the date of Plaintiff's offense in 05CF5015 was December 30, 2005.  (Defs.' Ex. C, Littlejohn Depo pg 9 ln 11-12);(Defs.' Ex. B, Sentencing Order 05CF5015).

13.     Defendant Littlejohn attempted to obtain a corrected jail verification, but no verification was received due to the records being lost by the County.  (Defs.' Ex. C, Littlejohn Depo pg 28, 34, 39-40).

14.     On October 19, 2009, Defendant Littlejohn recalculated the Plaintiff's sentence using only the sentencing orders and determined his outdate to be September 6, 2010.  (Defs.' Ex. C, Littlejohn Depo pg 28-29).

15.     Defendant Littlejohn informed the Plaintiff of the new calculation and the adjusted outdate.  (Defs.' Ex. C, Littlejohn Depo pg 52).

16.     Defendant Littlejohn instructed the Plaintiff that his sentence would be recalculated if he could obtain a sentencing order with time served credits listed.  (Defs.' Ex. C, Littlejohn Depo pg 57-58).

17.     On February 18, 2010, the Circuit Court of Lake County entered amended sentencing orders in cases 05CF1661 and 05CF5015.  (Defs.' Ex. D & E, Amended Sentencing Orders).

18.     The sentencing orders indicated:

> With credit for 373 days served in the Lake County Jail - credit for
> time awaiting transport to the Department of Corrections - good time
> as administered by the Department of Corrections - def to be released
> from the Department of Corrections without a term of Mandatory
> Supervised Release.

(Defs.' Ex. D & E, Amended Sentencing Orders).

19.     On February 18, 2010, the Circuit Court of Lake County also filed an Order indicating that Plaintiff shall be released from the Department of Corrections, without a term of MSR, on Friday, May 28, 2010. (Defs.' Ex. J, Lake County Order).

20     On February 22, 2010, Defendant Littlejohn received the amended sentencing orders and recalculated the Plaintiff's sentence.  (Defs.' Ex. C, Littlejohn Depo Ex 4)(Bates 1063).

21.     The Plaintiff's sentence was recalculated based on the new sentencing orders and his new outdate was August 23, 2009.  (Defs.' Ex. C, Littlejohn Depo Ex. 4).

22.     On February 22, 2010, Defendant Littlejohn contacted the Assistant States Attorney for Lake County and was informed that it was the Judge's intent to order no MSR.  (Defs.' Ex. C, Littlejohn Depo pg  42-43).

23.     On February 22, 2010, Defendant Littlejohn contacted Defendant Glenn Jackson and via email and notified him of the situation regarding the amended sentencing orders and the Court ordering no MSR for the Plaintiff.  (Defs.' Ex. Group L, BATES 1063).

24.     On February 22, 2010, Defendant Jackson forwarded the information to Alyssa Williams-Schafer, Coordinator for Sex Offender Services, to determine if the Plaintiff was eligible for Sexually Violent Persons review.  (Defs.' Ex. Group L, BATES 1125).

25.     On February 22, 2010, Defendant Jackson forwarded the information to Defendant Huntley and Joel Diers within the Legal Department at the Illinois Department of Corrections. (Defs.' Ex. Group L, BATES 1125).

26.     On February 22, 2010, Defendant Jackson received an email from Joel Diers indicating it was his legal opinion that the Judge "cannot legally sentence this offender without a term of MSR."  (Defs.' Ex. Group L, BATES 1125).

27.     On February 22, 2010, Defendant Jackson directed Defendant Littlejohn not to release the Plaintiff, and that Plaintiff be violated at the door for violating his mandatory supervised release term.  (Defs.' Ex. M, Grounds Rogs ¶4).

28.     On February 23, 2010, Defendant Littlejohn emailed Defendant Jackson seeking information as to whether Defendant Jackson had received a response from legal.  (Defs.' Ex. Group L, BATES 1113).

29.     On February 23, 2010, Defendant Jackson again emailed Defendant Huntley for direction as to what course of action to take with the Plaintiff.  Specifically, Defendant Jackson sought direction as to whether the Plaintiff should be released on Mandatory Supervised Release or just discharged from the Illinois Department of Corrections.  (Defs.' Ex. Group L, BATES 1118).

30.     Plaintiff was previously convicted of Aggravated Criminal Sexual Assault.  (Defs.' N, Plaintiff's Criminal History, BATES 849).

31.     A sex offender being released to a term of mandatory supervised release is required to have electronic monitoring.  (Defs.' Ex. G, Huntley Depo pg 33).

31.     In order to have electronic monitoring, the offender must have an acceptable host site for electronic monitoring.  (Defs.' Ex. G, Huntley Depo pg 33).

32.     Plaintiff did not provide an acceptable host site for electronic monitoring while on mandatory supervised release.  (Defs.' Ex. G, Huntley Depo pg 33).

33.     On February 23, 2010, Plaintiff was violated at the door for the parole violation of failing to provide an acceptable host site for electronic monitoring.  (Defs.' Ex. O, Parole Violation Report).

34.     On February 26, 2010, Defendant Littlejohn again emailed Defendant Jackson wondering if she should just discharge the Plaintiff because he was waiting on a response from legal. (Defs.' Ex. Group L, BATES 1112-1113).

35.     On February 26, 2010, Defendant Jackson wrote back to Defendant Littlejohn and informed her that he was still waiting on a response from legal. (Defs.' Ex. Group L, BATES 1112).

36.     On March 5, 2010, Defendant Littlejohn sent an email to Defendant Jackson following up regarding the Plaintiff's sentencing orders.  (Defs.' Ex. Group L, Bates 1112).

37.     On March 5, 2010, Defendant Jackson again sent an email to Defendant Huntley to reminding him of the Plaintiff's situation. (Defs.' Ex. Group L, Bates 1112).

38.     On March 12, 2010, Defendant Littlejohn sent another email to Defendant Jackson to remind him of the situation regarding the Plaintiff.  Defs.' Ex. Group L, (BATES 1105).

39.     On March 19, 2010, Defendant Littlejohn sent an email to Defendant Jackson to remind him of the situation and inform him that the Plaintiff filed a grievance.  (Defs.' Ex. Group L, BATES 1105).

40.     On March 19, 2010, Defendant Jackson informed Defendant Littlejohn that the Illinois Attorney General's Office had been contacted and that the Illinois Department of Corrections was waiting on a response.  (Defs.' Ex. Group L, BATES 1105).

41.     On March 26, 2010, Defendant Littlejohn sent an email to Defendant Jackson informing him that Plaintiff was scheduled to be seen by the Prisoner Review Board on April 7, 2010.  (Defs.' Ex. Group L, BATES 1101).

42.     On April 2, 2010, Defendant Littlejohn sent another reminder to Defendant Jackson regarding the Plaintiff.  (Defs.' Ex. Group L, BATES 1101).

43.     On April 2, 2010, Defendant Jackson sent an email to Defendant Huntley updating him on the situation with the Plaintiff and his upcoming Prisoner Review Board hearing.  (Defs.' Ex. Group L, BATES 1101).

44.     On April 8, 2010, Defendant Littlejohn emailed Defendant Jackson and updated him regarding the Prisoner Review Board hearing.  (Defs.' Ex. Group L, BATES 1097).

45.     On April 8, 2010, Defendant Jackson forwarded Defendant Littlejohn's email to Defendant Huntley.  (Defs.' Ex. Group L, BATES 1097).

46.     On Aril 16, 2010, Defendant Littlejohn sent another email to Defendant Jackson to remind him of the situation regarding the Plaintiff.  (Defs.' Ex. Group L, BATES 1092).

47.     On April 23, 2010, Defendant Littlejohn sent an email to Defendant Jackson inquiring as to whether the Illinois Attorney General's Office was still working on the Plaintiff's matter. (Defs.' Ex. Group L, BATES 1092).

48.     On April 23, 2010, Defendant Jackson emailed Defendant Huntley wondering if a decision has been made on how to proceed with the Plaintiff's situation.  (Defs.' Ex. Group L, BATES 1087).

49.      On April 23, 2010, Defendant Jackson emailed Defendant Littlejohn to inform her that it was his understanding that the Illinois Attorney General's Office was still reviewing the matter.  (Defs.' Ex. Group L, BATES 1092).

50.     On April 23, 2010, Defendant Huntley emailed Defendant Jackson and stated he would contact the Illinois Attorney General's Office regarding the situation and that he had not heard from them in awhile.  (Defs.' Ex. Group L, BATES 1082).

51.     On April 29, 2010, Defendant Littlejohn informed Defendant Jackson that the Prisoner Review Board determined the Plaintiff had not violated mandatory supervised release. (Defs.' Ex. Group L, BATES 1059).

52.     Defendant Littlejohn informed Defendant Jackson that she would again violate the Plaintiff at the door.  (Defs.' Ex. Group L, Bates 1059).

53.     On April 29, 2010, Defendant Jackson forwarded Defendant Littlejohn's email to Defendant Huntley.  (Defs.' Ex. Group L, BATES 1059).

54.     On May 13, 2010, Defendant Littlejohn again emailed Defendant Jackson regarding the Plaintiff's situation.  (Defs.' Ex. Group L, BATES 1070-71).

55.     On May 21, 2010, Defendant Littlejohn emailed Defendant Jackson wondering if the Illinois Attorney General's Office had made a decision on the case.  (Defs.' Ex. Group L, BATES 1070).

56.     On May 21, 2010, Defendant Huntley informed Defendant Jackson that the Illinois Attorney General's Office had refused to pursue a request to the Court that the sentencing orders be modified or otherwise move for leave to intervene on behalf of the Illinois Department of Corrections.  (Defs.' Ex. Group L, BATES 1070).

57.     Defendant Huntley informed Defendant Jackson that Plaintiff should be discharged from the Illinois Department of Corrections.  (Defs.' Ex. Group L, BATES 1070).

## FACTS REGARDING SENTENCE CALCULATION PROCESS

58.     Defendant Michelle Littlejohn was temporarily assigned as the Records Office Supervisor for Robinson Correctional Center during the relevant times of the complaint.  (Defs.' Ex. C, Littlejohn Depo pg 7).

59.     Defendant Glenn Jackson was the Chief Records Officer for the Illinois Department of Corrections during all relevant times of the complaint.  (Defs.' Ex. F, Jackson Depo pg 6).

60.     Defendant Edward Huntley was Chief Legal Counsel and Special Litigation Counsel for the Illinois Department of Corrections during all relevant times of the complaint.  (Defs.' Ex. G, Huntley Depo pg 5).

61.     The Illinois Department of Corrections Training Manual informs facility records office personnel to contact the Chief Records Officer for the Department in the event a sentencing order is received that states NO MSR.  (Defs's Ex. C, LittleJohn Depo Ex. 5 pg 1 ¶3).

62.     The local records office personnel would also contact the prosecutor to determine if the Order was an oversight or mistake and request that the Order be modified to come into compliance with the law.  (Defs.' Ex. G, Huntley Depo pg 15-16).

63.     Further, it is the Chief Records Officer's procedure to contact the Legal Department for the Illinois Department of Corrections for guidance upon notification of an irregular order.  (Defs.' Ex. F, Jackson Depo pg 11-13);(Defs.' Ex. G, Huntley Depo pg 15-16).

64.     The Department then determines whether to seek representation to change or modify the Order or whether to follow the Order.  (Defs.' Ex. G, Huntley Depo pg 17).

65.     If it is determined the Order should be vacated or modified, the Illinois Department of Corrections seeks representation from the Illinois Attorney General's Office.  (Defs.' Ex.G, Huntley Depo pg 17).

66.     In the instant matter, Defendant Huntley had a "number of conversations with the Attorney General's Office about what thoughts were and [his] effort to persuade them to agree to file something on behalf of the Department." (Defs.' Ex.G, Huntley Depo pg 18).

67.     Defendant Huntley was in contact with Assistant Attorney General Kevin Lovellette, supervisor for the Prisoner Litigation Unit in the Attorney General's Office in Chicago, Illinois. (Defs.' Ex.G, Huntley Depo pg 25).

68.     Mr. Lovellette eventually informed Defendant Huntley that the Illinois Attorney General's Office was not going to pursue modification or intervention regarding Plaintiff's sentencing orders.  (Defs.' Ex.G, Huntley Depo pg 25).

69.     In situations similar to the instant matter, Defendant Jackson would not have rendered a decision regarding the release of the Plaintiff without the direction of the Illinois Department of Corrections Legal Department.  (Defs.' Ex. F, Jackson Depo pg15-16).

70.     Defendant Jackson was directed by Defendant Huntley not to release the Plaintiff until there was clarification regarding the order.  (Defs.' Ex. F, Jackson Depo pg 49-50).

**FACTS REGARDING WARDEN RANDY GROUNDS**

71.     Defendant, Randy Grounds, was the Warden of Robinson Correctional Center during all relevant times of the complaint. (Defs.' Ex. H, Grounds Depo pg 5).

72.     On March 9, 2010, Plaintiff wrote a grievance regarding his outdate from IDOC custody.  (Defs.' Ex. H, Grounds Depo Ex. 1).

73.     The March 9, 2010, grievance was marked for emergency review.  (Defs.' Ex. H, Grounds Depo Ex. 1).

74.     Defendant Grounds determined an emergency was not substantiated within the grievance.  (Defs.' Ex. H, Grounds Depo Ex. 1).

75.     Defendant Grounds does not substantiate a grievance as an emergency unless it involves the offender's health, an injury, or medical treatment.  (Defs.' Ex. H, Grounds Depo pg 33).

76.     Defendant Grounds had no other interaction with the Plaintiff or his sentence calculation other than the denial of an emergency grievance.  (Defs.' Ex. H, Grounds Depo pg 23-24).

77.     Defendant Grounds does not calculate sentences or release dates.  (Defs.' Ex. H, Grounds Depo pg 24-25).

78.     Defendant Grounds relies solely on the records office supervisor to calculate sentences.  (Defs.' Ex. H, Grounds Depo pg 25).

79.     Defendant Grounds lacks the authority to release an offender without the consent of the Records Office.  (Defs.' Ex. H, Grounds Depo pg 26).

80.     Defendant Grounds does not know how to calculate an offender's sentence.  (Defs.' Ex. H, Grounds Depo pg 34-35).

## FACTS REGARDING DION DIXON

81.     Dion Dixon was the Supervisor for the Sex Offender Unit within Parole at the Illinois Department of Corrections.  My duties as supervisor included overseeing the daily activities of parole agents assigned to the unit.  (Defs.' Ex. I, Dixon Aff ¶1).

82.     Defendant Dixon had no personal involvement in the determination to violate Mr. Armato's parole at Robinson Correctional Center.  (Defs.' Ex. I, Dixon Aff ¶3).

83.     Defendant Dixon's involvement was limited to receiving notification of the violation and completing a violation report and notice of charges.  The violation report and notice of charges are standard forms that are served on an offender prior to his hearing with the Prisoner Review Board.  (Defs.' Ex. I, Dixon Aff ¶4).

11

84.  Defendant Dixon possessed no personal knowledge regarding Mr. Armato's sentencing orders when completing the violation report.  (Defs.' Ex. I, Dixon Aff ¶5).

85.  Defendant Dixon was not aware that the sentencing orders indicated Plaintiff was not to serve a term of mandatory supervised release.  (Defs.' Ex. I, Dixon Aff ¶5).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant.  Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.1986). Yet not every conceivable inference must be drawn, only reasonable inferences.  Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312-13 (7th Cir.1986).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the United States Supreme Court held that summary judgement is mandatory if there is no genuine issue as to any material fact for trial if, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 323.  The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the finder of fact to find in Plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the Plaintiff. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994); International Union of Operating Engineers v. Associated General Contractors, 845 F.2d 704, 708 (7th Cir. 1988).

## ARGUMENT

### I.  PLAINTIFF'S STATE LAW FALSE IMPRISONMENT CLAIM MUST BE BROUGHT WITHIN THE ILLINOIS COURT OF CLAIMS

In Count IV, Plaintiff brings a state law false imprisonment suit against Defendants Grounds, Dixon, Jackson, Huntley, and Littlejohn.  The Eleventh Amendment regarding sovereign immunity does not by itself shield individuals like the Defendants from Federal Court jurisdiction over State law tort claims. Magdziak V. Byrd, 96 F.3d 1045, 1048 (7th Cir. 1996); citing Benning v. Board of Regents of Regency Universities, 928 F.2d 778-79 (7th Cir. 1991).   However, the Seventh Circuit has stated that the Federal Courts are bound by State rules of immunity regarding State law causes of actions.  Magdziak, at 1048.  Thus, this Court must look to Illinois rules governing immunity.

The Illinois Constitution of 1970 abolished sovereign immunity "except as the General Assembly may provide by law."  Ill. Const. 1970 art. XIII, §4.  The legislature then enacted the State Lawsuit Immunity Act, which provides that "except as provided in the Illinois Public Labor Relations Act [5 ILCS 315/1], the Court of Claims Act [705 ILCS 5/1], the State Officials and Employees Ethics Act [5 ILCS 430/1-1], Section 1.5 of this Act, and, except as provided in and to the extent provided in the Clean Coal FutureGen for Illinois Act [20 ILCS 1107/1], the State of Illinois shall not be made a defendant or party in any court.  745 ILCS 5/1 (West 2008)).  The Court of Claims has exclusive jurisdiction to hear and determine any claim against the state "founded upon any law of the State of Illinois ***."  705 ILCS 505/8(a) (West 2008).  The purpose of sovereign immunity is to protect the state from interference with the performance of governmental functions and to preserve and protect state funds.  People ex rel. Manning v. Nickerson, 184 Ill. 2d 245, 248, 702 N.E.2d 1278, 1280 (1998).

Under Illinois law, the applicability of sovereign immunity does not depend on the formal designation of the defendants in the action.  Jackson v. Alverez, 358 Ill.App.3d 555, 559 (2005).  An

action brought against a State employee in his individual capacity is viewed as having been brought against the State if there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority, (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment, and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.  Healy v. Vaupel, 133 Ill.2d 295, 309 (1990).

Applying the three factor test outlined in Healy indicates that this Court lacks jurisdiction over the state law false imprisonment claim.  First, in responses to interrogatories, Plaintiff specifically stated he was not alleging the Defendants acted outside the scope of their employment. (Defs.' Ex. K , Pltff's Rsp to Rog ¶5).  Second, the duty in regards to properly calculating the Plaintiff's sentence or releasing him from incarceration is one owed by the Defendants only as a result of their State employment.  Finally, the actions taken by the Defendants were clearly within their normal and official duties of the State.  Thus, Defendants are entitled to summary judgment as it relates to the false imprisonment claim.

## II.    THE AMENDED SENTENCING ORDERS WERE VOID AND THEREFORE A COMPETE NULLITY AND WITHOUT LEGAL EFFECT.

Plaintiff's constitutional claims and state law tort claim is based on the fact the Defendants did not immediately comply with the Circuit Court's February 18, 2010, sentencing orders.  The theory is essentially that the  Defendants were aware of the Court Order requiring sentence credit and no MSR, but they refused to obey the order and thus violated Plaintiff's rights.  On February 18, 2010, the Circuit Court of Lake County entered amended sentencing orders in cases 05CF1661 and 05CF5015.  (Defs.' Ex. D & E, Amended Sentencing Orders). The sentencing orders indicated :

> With credit for 373 days served in the Lake County Jail - credit for
> time awaiting transport to the Department of Corrections - good time
> as administered by the Department of Corrections - def to be released

14

from the Department of Corrections without a term of Mandatory
Supervised Release.

(Defs.' Ex. D & E, Amended Sentencing Orders). The Plaintiff's sentence was recalculated and his

new outdate was August 23, 2009. Plaintiff was not released from the custody of the Illinois

Department of Corrections until May 21, 2010, after all avenues to correct the sentencing orders

were exhausted.

However, the Court lacked the authority to order **NO** MSR ("Mandatory Supervised

Release"). Plaintiff's original sentencing orders were entered on March 6, 2006. (Defs.' Ex. A &

B, Sentencing Orders). At the time of Plaintiff's conviction, the Unified Code of Corrections stated:

> [e]xcept where a term of natural life is imposed, every sentence shall include as
> though written therein a term in addition to the term of imprisonment. . . . For those
> sentenced on or after February 1, 1978, such term shall be identified as a mandatory
> supervised release term.

730 ILCS 5/5-8-1(d)(West 2008).

A term of MSR is to be served in addition to Plaintiff's term of imprisonment. The two

terms are separate and not to be served within one another. Owens v. Snyder, 349 Ill. App. 3d 35,

44-45, 811 N.E.2d 738, 746-747 (2004) (affirming dismissal of the plaintiff's mandamus complaint

in which he claimed his term of MSR must run concurrently with his prison terms). In Owens, 349

Ill. App. 3d at 38, 811 N.E.2d at 741, the plaintiff argued that in the event he violated MSR and was

re-incarcerated, he could end up serving more than his judicially imposed sentence. He therefore

claimed that his term of MSR should run concurrently with his prison term. Owens, 349 Ill. App.

3d at 38, 811 N.E.2d at 741. The Court observed that the plaintiff's claim was frivolous and without

merit, as the terms of MSR are imposed by statute in addition to imprisonment and cannot be

stricken by the courts. Owens, 349 Ill. App. 3d at 45, 811 N.E.2d at 746. Therefore, Plaintiff is

required to serve a term of MSR as set forth in the Unified Code of Corrections.  730 ILCS 5/5-8-1(d).

A sentence that does not conform to a statutory requirement is void and may be corrected at any time.  People v. Arna, 168 Ill.2d 107, 113 (1995).  The Illinois Supreme Court has defined a void order in the following manner:

> [a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally."

(internal quotation marks omitted) (Sarkissian v. Chicago Board of Education, 201 Ill.2d 95, 103 (2002).  A sentence that incorrectly applies the statutorily required MSR term is void.  People v. Thompson, 209 Ill.2d 19 (2004) (a sentence not authorized by statute is void).

"A void judgment is from its inception a complete nullity and without legal effect."  Ford Motor Credit Co. v. Sperry, 214 Ill.2d 371, 379-80 (2005).  The defendants cannot be held liable to the plaintiff for failure to follow a void order.  Faris v. Faris, 35 Ill.2d 305, 309 (1966) (contempt will not lie for failure to comply with a void order).  The Defendants took steps to have the Order corrected or amended and complied with the order after exhausting these avenues to change the order.  Plaintiff was actually provided a "windfall" in that he was not required to serve a term of mandatory supervised release as required by law and that the State of Illinois did not challenge said order.  Plaintiff now seeks to compound the windfall by seeking damages from the Defendants for not providing the"windfall" immediately.  Since the order was void and therefore a complete nullity, Defendants cannot have violated the Plaintiff's Eighth or Fourteenth Amendment rights for failure to immediately adhere to said order.

16

### III.    DEFENDANTS GROUNDS AND DIXON LACK THE REQUISITE PERSONAL INVOLVEMENT FOR LIABILITY UNDER 42 U.S.C. §1983.

Defendants Grounds and Dixon were not personally involved in the calculation of the Plaintiff's sentence or the determination to hold the Plaintiff while challenging the sentencing order. Defendants in a suit brought pursuant to 42 U.S.C. § 1983 can only be held liable for their individual wrongdoing. Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of the plaintiff's constitutional rights or must directly or knowingly consent to the conduct alleged to constitute the violation. Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). "Section 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 454 U.S. 312, 325 (1981). A supervisory official can be liable only for his own misconduct, not for the misconduct of individuals under his supervision. Duckworth, 780 F.2d at 650. Thus, a supervisory official must be personally involved in the alleged conduct to be liable. City of Chicago, 856 F.2d at 992.

### A.    Defendant Grounds

Defendant Grounds was the Warden of Robinson Correctional Center during the relevant times of the complaint. His only interaction with the Plaintiff was through the denial of an emergency grievance. In fact, Defendant Grounds duties do not include the calculation of an offenders' sentence; for that he relies solely on the Records Office. Defendant Grounds cannot be held liable for failure to perform another individual's job duties. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen").

17

**B.     Defendant Dixon**

Defendant Dixon also lacked the necessary personal involvement to be held liable for an alleged violation of the Plaintiff's rights.  Mr. Dixon worked in the Parole office of the Illinois Department of Corrections.  He lacked any personal involvement in the determination to violate the Plaintiff's parole, but only filled out the paperwork following the violation determination of the facility.  Mr. Dixon lacked any knowledge regarding the Plaintiff's sentencing orders or the fact that Plaintiff was ordered released without MSR.  Further, Defendant Dixon has no authority to release the Plaintiff from custody.  Since Defendant Dixon lacked personal involvement, he is entitled to summary judgment.

**IV.     THERE IS INSUFFICIENT EVIDENCE FOR A RATIONAL JUROR TO DETERMINE DEFENDANTS LITTLEJOHN, JACKSON, OR HUNTLEY ACTED WITH DELIBERATE INDIFFERENCE.**

The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment on individuals convicted of a crime.  U.S. CONST. AMEND. VIII.  The phrase "cruel and unusual" has been interpreted to include punishment that is without penological justification.  Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  Incarceration beyond an offender's imposed term of imprisonment is not penologically justified.  *See* Campbell v. Peters, 256 F.3d 695, 700 (2001).  However, the "extended incarceration must also be the product of deliberate indifference before a constitutional violation, as opposed to an error of state law, is implicated."  Id.

Plaintiff cannot show that he was incarcerated beyond his imposed term of imprisonment.  The Court entered three orders on February 18, 2010.  The amended sentencing orders indicate that the Plaintiff was to be credited with 373 days for time served and released without a term of MSR.  The records office recalculated his sentence based on these orders and determined his release date to be August 23, 2009.  However, the Court also entered an order on February 18, 2010, indicating

the Plaintiff was to be released on May 28, 2010, without a term of MSR. The Plaintiff was released on May 21, 2010. Therefore, the Plaintiff was released prior to the date certain set by the Court in its February 18, 2010, Court Order. Since the Plaintiff was released timely according to the Order that provided a date certain, Defendants cannot be liable for extending Plaintiff's imposed term of incarceration.

In the alternative, the Defendants did not act with deliberate indifference in extending Plaintiff's term of incarceration. Deliberate indifference is not negligence or even gross negligence; it approaches intentional wrongdoing, that is, ignoring a known risk. Johnson v. Snyder, 444 F.3d 579, 585 (7th Cir. 2006). The official must "demonstrate something approaching total unconcern for [the inmate's] welfare in the face of serious risks." Duane v. Lane, 959 F.2d 673, 676 (7th Cir. 1992), or must demonstrate a "conscious, culpable refusal to prevent harm." Id. No liability attaches if the harm is remote, or the official is unaware of or unable to correct the problem. Id.

The actions of Defendants Littlejohn, Jackson, and Huntley were the antithesis of deliberate indifference. The record as it stands, clearly indicates concern and effort on the part of the Defendants to rectify the issue regarding the Plaintiff's sentence. The Order was immediately sent to Glenn Jackson for review as required by the Records Office Training Manual. Glenn Jackson, as the Chief Records Officer, contacted and consulted with Edward Huntley regarding the void order. Mr. Huntley then attempted to obtain representation from the Illinois Attorney General's Office to have the order vacated or modified. Throughout, Michelle Littlejohn persistently contacted Glenn Jackson seeking the Department's decision on whether to release the Plaintiff. Mr. Jackson in turn, continuously contacted Defendant Huntley seeking the Department's final determination. Defendant Huntley contacted the Illinois Attorney General's Office on a number of occasions seeking its response as to whether it planned on representing the Department. Upon exhausting all avenues to

modify or vacate the void order, the Plaintiff was released from the custody of the Illinois Department of Corrections.

### V.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT CLAIMS.

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 817, 818 (1982). A court required to rule upon qualified immunity of a government official must first determine whether a favorable view of the plaintiff's alleged facts show that the official's conduct violated a constitutional right, and if they have, to determine whether the applicable constitutional standards were clearly established at the time the events took place.  Saucier v. Katz, 533 U.S. 194, 200 (2001). As the United States Supreme Court announced in Pearson v. Callahan, a district court has discretion to consider which part of the test to address first.  Pearson, 129 S. Ct. 808, 818 (2009).

The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.  This inquiry must be "undertaken in light of the specific context of the case, not as a "broad general proposition" and must be "particularized" based on the facts confronting the officer.  Brosseau v. Haugen, 543 U.S. 194 (2004); Anderson v. Creighton, 483 U.S. 635 (1987).  Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong.  Jones, 856 F.2d at 994.  Implicit in the qualified immunity analysis is the requirement that the violation must have been intentional or the result of some gross misfeasance or nonfeasance on the part of the governmental officer arising to the level of incompetence.  Anderson, 483 U.S. 635.

In the instant matter, it was not and still is not clear that the Defendants acted in violation of the Plaintiff's clearly established Constitutional rights. Plaintiff's sentence was entered without a term of MSR. Illinois law requires that all sentences be accompanied by a term of MSR. In fact, the Court lacked the legal authority to enter the sentence without a term of MSR. The essential fact is that the Defendants treated Plaintiff as if he was serving his statutorily required term of MSR while attempting to have the Court Order modified or vacated. Plaintiff cannot meet his burden of showing the actions taken by the Defendants were in violation of clearly established law. There is no case law indicating that the Defendants actions of exhausting all avenues to change or modify a void order prior to releasing the Plaintiff was a violation of the Constitution. Further, there is no case establishing that the procedures for calculating an offenders sentence violates the Fourteenth Amendment. Defendant are also is entitled to qualified immunity on separate grounds.

A.    **Defendant Littlejohn**

Defendant Littlejohn as the Records Office Supervisor at Robinson Correctional Center relied on her superior officer to make determinations regarding the release of the Plaintiff. Glenn Jackson, the Chief Records Officer for the Illinois Department of Corrections, in consultation with the legal department of the Illinois Department of Corrections, made the decisions regarding Plaintiff's release. Defendant Littlejohn not only lacked the authority to release the Plaintiff from custody, but she lacked the discretion to make a determination regarding the Plaintiff's release. Since, Defendant Littlejohn did her duty as a Records Officer Supervisor and reported the Plaintiff's sentence issue to the Chief Records Officer, she cannot be found deliberately indifferent or to have violated the Plaintiff's due process rights. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their

roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen")

B.      **Defendant Jackson**

Defendant Jackson is entitled to qualified immunity based on his reliance on the advice of counsel.  Defendant Jackson immediately sought advice from Defendant Huntley the Chief Legal Counsel for the Illinois Department of Corrections at the time.  Defendant Jackson was directed by Defendant Huntley not to release the Plaintiff until there was clarification regarding the order.  In fact, Defendant Jackson continuously sent updates to Defendant Huntley regarding the Plaintiff's situation and repeatedly sought advice on how to proceed.  Therefore, Defendant Jackson is also entitled to qualified immunity under the "exceptional circumstances" exception identified under Harlow, 457 U.S. at 819.  The reliance on the advice of counsel is grounds for qualified immunity. Davis v. Zirkelbach, et al., 149 F.3d 614, 620 (officers entitled qualified immunity after following the advice of counsel).

C.      **Defendant Huntley**

Defendant Huntley is entitled to qualified immunity because it was unclear at the time that the actions and advice he gave Defendant Jackson was in violation of the Plaintiff's clearly established Constitutional rights.  Plaintiff was required by statute to serve a term of MSR and the Court's Order of no MSR was in violation of state law.  There is no case law indicating that a Defendant's refusal to follow a void order, that is in direct contradiction of state law, while attempting to have the order modified or vacated was a violation of the Plaintiff's clearly established rights.

22

D.    **Defendant Grounds**

Defendant Grounds is entitled to qualified immunity because he lacked personal involvement in the decision making of whether to release the Plaintiff.  Defendant Grounds relies on the Records Officer to make determinations regarding an offender's sentence calculations and whether or not to release the offender.  The case law is clear that Defendant Grounds is entitled to rely on these individuals to make determinations and thus cannot be held liable for failing to overturn their decisions.  To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of the plaintiff's constitutional rights or must directly or knowingly consent to the conduct alleged to constitute the violation.  Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985).

E.    **Defendant Dixon**

Defendant Dixon is entitled to qualified immunity not only because he lacked personal involvement, but because the Plaintiff cannot show he acted with deliberate indifference.  Defendant Dixon lacked any knowledge regarding the Plaintiff's sentencing orders and was not aware that the Court ordered NO MSR.  Without personal knowledge of the Court Order, Defendant Dixon cannot be found to have been deliberately indifferent.  Liability under the Eighth Amendment requires the Defendants to have knowledge and intent.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

**VI.    PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS WERE
         NOT VIOLATED BY THE DEFENDANTS AS A RESULT OF THE
         ADEQUATE POST-DEPRIVATION REMEDIES AVAILABLE
         TO HIM.**

Plaintiff alleges that his continued incarceration violated his rights under the Due Process Clause of the Fourteenth Amendment.  Due process requires as much procedural protection as the situation demands.  Matthews v. Eldridge, 424 U.S. 319, 334 (1976).  In cases where an individual challenges the length of his incarceration on the grounds the state actors are mistakenly calculating his sentence, Courts are required to consider the adequacy and availability of post deprivation

23

remedies under state law.  Toney-el v. Franzen, 777 F.2d 1224, 1227 (7th Cir. 1986).  In the instant matter, Plaintiff had adequate post-deprivation remedies for which he could have availed himself during the time he was serving his mandatory supervised release.

Plaintiff could have filed an action for habeas corpus relief.  Under Illinois law, a prisoner may seek habeas corpus relief only on the grounds specified in section 10-124 of the Code of Civil Procedure.  735 ILCS 5/10-124.  Habeas corpus relief is available only to obtain the immediate release of a prisoner (1) who has been incarcerated under a judgment of a court which lacked jurisdiction; or (2) where there has been some occurrence after the prisoner's conviction which entitles him to release.  Barney v. Prison Review Bd., 184 Ill. 2d 428, 430, 704 N.E.2d 350, 351 (Ill. 1998).  Habeas corpus relief is limited to the immediate release of a person who is in civil custody by a final judgment of a circuit court.  People ex rel. Burbank v. Irving, 108 Ill. App. 3d 697, 700, 439 N.E.2d 554, 556 (Ill. App. Ct. 1982); Turner v. Campagna, 281 Ill. App. 3d 1090, 1096-97, 667 N.E.2d 683, 687 (Ill. App. Ct. 1996).

Plaintiff was capable of seeking a writ of mandamus. A writ of mandamus is an extraordinary remedy used to direct public officials to perform a duty which the petitioner has a clear right to have performed.  Lewis E. v. Spagnolo, 186 Ill. 2d 198, 229, 710 N.E.2d 798, 813 (Ill. 1999).  It is traditionally used to compel a public official to perform a ministerial duty; that is, a duty which does not involve the exercise of judgment or discretion.  People ex rel. Madigan v. Snyder, 208 Ill. 2d 457, 464, 804 N.E.2d 546, 587 (Ill. 2004).  Mandamus lies to compel the performing of a statutory duty only when the petitioner sets forth every material fact needed to show there is (1) a clear affirmative right to relief, (2) a clear duty of the public official to act, and (3) a clear authority in the

public official to comply with the writ.  People ex rel. Ryan v. Roe, 201 Ill. 2d 552, 555, 778 N.E.2d

701, 703 (Ill. 2002); Chicago Ass'n of Commerce & Indus. v. Reg'l Transp. Auth., 86 Ill. 2d 179,

185, 427 N.E.2d 153, 157 (Ill. 1981).

Plaintiff was even also capable of filing an action within the Illinois Court of Claims for

damages.  See Evans v. State of Illinois, 55 Ill.Ct.Cl. 395 (Plaintiff brought and prevailed on a

negligent incarceration suit as a result of his extended incarceration).  "Because Illinois law and the

informal procedures of the Department of Corrections provided [plaintiff] with remedies that were

both adequate and available, [plaintiff has failed to allege a violation of the Due Process Clause of

the fourteenth amendment." Toney-el v. Franzen, 777 F.2d 1224, 1228 (7th Cir. 1986).

## CONCLUSION

WHEREFORE, for the above and forgoing reasons, Defendants respectfully request that

this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

RANDY GROUNDS, MICHELE LITTLEJOHN,
DION DIXON, EDWARD HUNTLEY,
 and GLENN JACKSON,

Defendants,

Robert L. Fanning, #6296345
Assistant Attorney General          LISA MADIGAN, Attorney General,
500 South Second Street             State of Illinois,
Springfield, Illinois 62706
Telephone:  (217) 782-9056          Attorney for Defendants,
Facsimile:  (217) 782-8767
E-Mail:  rfanning@atg.state.il.us   By:____s/ ROBERT L. FANNING_____
                                         Robert L. Fanning, #6296345
Of Counsel.                              Assistant Attorney General

No. 11-3023

**Certificate of Service**


I hereby certify that on October 16, 2012, I electronically filed a Memorandum of Law in Support of Defendants' Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dennis J. DeCaro
djd0089@aol.com




Respectfully submitted,

  s/ Robert L. Fanning
Robert L. Fanning
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-9056
Facsimile:  (217) 782-8767

26