IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAVID ARMATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Court No.: 11 cv 3023** |
| | ) | |
| RANDY GROUNDS, MICHELE LITTLEJOHN, | ) | |
| GLENN JACKSON, DION DIXON, and | ) | |
| EDWARD HUNTLEY, all in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO ALL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, by and through his attorneys, Kupets & DeCaro, P.C, in

Response to Defendants' Motion for Summary Judgment and in support Plaintiff states the

following:

**Plaintiff's Allegations Against the Defendants**

Plaintiff has alleged that Mr. Armato was wrongfully detained and imprisoned by the

defendants for 269 days.  The Records Office at the Robinson Correctional Center could not

determine the correct number "time served" days when calculating Mr. Armato's release date

from the penitentiary.  Armato, filed a motion with court and on February 18, 2010, the Circuit

Court of Lake County, Illinois clarified, Armato's credits for time served, and specifically

provided in three court orders that Armato was to be credited for 373 days served in the Lake

County Jail, and to be released from the Department of Corrections without a term of Mandatory

Supervised Release.    Based on the February 18th court orders, Armato should have been released

1

from Robinson on August 29, 2009.  Armato was not released from the Robinson Correctional

Center until May 21, 2010, despite the defendants actual knowledge of the court orders requiring

his August 29, 2009 release. (See para. 2 of Plaintiff's Amended Complaint, attached as **Exhibit

A**)

It was further alleged that each defendant had the power and authority to release the

plaintiff, but intentionally refused to do so in violation of Eighth and  Fourteenth Amendment of

the United States Constitution, 42 U.S.C. § 1983, and state common law of Illinois.  (See, Amd.

Cpt. *in passim*)

## The Plaintiff and Defendants

1.	On September 24, 2005, the Plaintiff, Armato, plead guilty to a theft offense and

received a sentence of 24 months of intensive probation (05CF1661).  On December 20, 2005,

Armato was charged with theft of a watch violating his probation (05CF5015).  On March 6,

2006, Armato was sentenced to 10 years for the second theft arrest, 05CF5015, to run concurrent

with his prior charge 05CF1661.  Neither of the sentencing orders entered in the above cases

provided for a term of Mandatory Supervised Release.  (3/6/06 court orders bate stamped 777-

780, attached as Plaintiff's **Group Exhibit B**); and, (Amd Cpt para 11)

Armato arrived at the Robinson Correctional Center in November 2007. (Littlejohn dep

p.9, attached as **Exhibit C**)

2.	Defendant Michelle Littlejohn, during the relevant time period, was the Robinson

Record's Office Supervisor responsible for calculating the prisoner's release dates. (Littlejohn

dep pp.7-8)

3.	Defendant, Glenn Jackson, was the Chief Records Officer for the Illinois

2

Department of Corrections ("IDOC").  Mr. Jackson acted as liaison between IDOC, the courts

and IDOC's legal staff.  (Littlejohn dep pp.12-13)(Jackson dep p.6, attached as **Exhibit D**)

4.      Edward Huntley was the Chief Legal Counsel and Special Litigation Counsel for

the Illinois Department of Corrections at all relevant times. (Huntley dep p.5, attached as **Exhibit**

**E**)

5.      Randy Grounds was the warden at Robinson Correctional Center at all relevant

times. (Grounds deposition is attached as **Exhibit F**.  Ground dep Exhibit 2 consist of bate

stamped documents from 724 to1134, therefore, we did not attach the entire exhibit, but attached

and referenced various bate stamped pages throughout this Response)

6.      Defendant, Dion Dixon, was a Parole Supervisor for the Robinson Correctional

Center, at all relevant times, and had the power and authority to release the plaintiff from the

Robinson Correctional Center. (Amd Cpt para 9)   Dixon violated Armato's parole several times

after 2/18/10.

### Undisputed Facts

7.      On May 11, 2007, Armato was given 90 days good time and his release date was

calculated as 2/9/10.  (Littlejohn dep pp.16-17)

8.      Armato arrived at the Robinson Correctional Center in November 2007, at which

time his release date should have been recalculated.  (Littlejohn dep p.9)

9.      On August 15, 2008, Armato was given another 90 days good time and his release

date was recalculated as 11/9/09.  (Littlejohn dep pp.17-18)

10.     A inmate's release date should be "constantly reviewed for accuracy." (Jackson

dep pp.30-31)

3

11.     Prior to February 18, 2010, Armato filed a *pro se* motion with the Circuit Court of Lake County, Illinois to ascertain the correct number of days he was to received as "time served" in the Lake County Jail.  The circuit court entered three Orders regarding 05 CF 1661 and 05 CF 5015.  (Three Amended Sentencing Orders attached as **Pltf's Exh. G;** two are bate stamped as 785 and 786, and the third is a hand written order)

12.     The 2/18/10 orders provided that "with credit for 373 days served in the Lake County Jail - credit for time awaiting transport to the Department of Corrections - good time credit as administered by the Department of Corrections - def to be released from the Department of corrections without a term of Mandatory Supervised Release." *Id.*   The hand written order provided the court's reasoning.

13.      Littlejohn was provided with the amended sentencing orders on February 22, 2010. (Littlejohn dep pp.13)

14.     After receiving the 2/18/10 Orders from the court, Littlejohn recalculated Armato's release date as August 23, 2009.  Jackson never disputed the August 23rd release date. (Littlejohn dep pp.22-23)

15.     Littlejohn testified that she typically relied solely on the circuit court orders for determining an prisoner's release date. (Littlejohn dep pp.26-27)

16.     Jackson also testified that the IDOC determined a prisoner's release date by relying upon the court orders. (Jackson dep p.20)

17.     Jackson testified further that no one had ever provided him with, nor did he know of, any legal authority that would have allowed him to <u>not</u> follow a court order.  (Jackson dep p.29)

4

18.     When calculating Armato's release date, the only information that Littlejohn had regarding Armato's time served in the county jail before sentencing were the 2/18/10 Court Orders that provided that Armato was entitled to 373 days time served in the Lake County jail. (Littlejohn dep p.12)

19.     It was Littlejohns understanding that the only reason why Armato was not released was because the Orders stated that he was to be release with no MSR or mandatory supervised release.  (Littlejohn dep p.20)

20.     Littlejohn did not release Armato because Glenn Jackson instructed her not to release Armato. (Littlejohn dep pp.12-13)

21.     Littlejohn never had any contact with the IDOC legal department regarding Armatos situation. (Littlejohn dep p.14)

22.     If Littlejohn had followed the court orders and she released Armato with no MSR, then Armato would <u>not</u> have needed a host site as a condition of his release.   (Littlejohn dep p.23)

23.     Similarly, Glenn Jackson and Edward Huntley agreed that, having no host site was <u>not</u> an issue in Armato's case, and if the 2/18/10 court orders were followed, Armato should have been release immediately upon returning to Robinson Correctional on or about 2/18/10. (Jackson dep pp.33-34)(Huntley de pp.34-35)

24.     If the two orders were followed, Armato did not need a host family when he was released.  (Jackson dep p.32)

25.     Armato's prior sex offense was a "moot issue" as it related to his discharge in this

5

case.  (Jackson dep p.25)[1]

 26. On February 22, 2010, Littlejohn spoke directly to Lake County Assistant State's Attorney, Eric Kalata, who specifically informed Littlejohn that Judge Potkonjak specifically intended for Armato to not have a MSR term.   (Littlejohn dep pp.42-43)

 27. Armato was violated at the door on February 23, 2010 and April 29, 2010. (Littlejohn dep p.23)

 28. According to Littlejohn, nothing Armato was doing administratively through his grievances or parole hearing would have gained his release absent the okay from Glenn Jackson. (Littlejohn dep pp.44-45)

 29. Jackson confirmed that there was no procedure or path Armato could have taken to gain his release prior to Jackson ordering his release.  (Jackson dep p.17)

 30. The Prisoner Review Board found that Armato was not a parole violator on April 7, 2010.   (Littlejohn dep p.45, and bate stamped doc 1060 attached as **Exh. H**)

 31. A member of the Prisoner Review Board told Littlejohn that he believed that Armato "had a lawsuit."  (Littlejohn dep p.45)

 32. The Prisoner Review Board's finding that Armato was not a parole violator had no impact or influence on Jackson's inaction which resulted in the continued imprisonment of Armato.  (Jackson dep pp.39-40)

 33. Littlejohn herself, wrote to Glenn Jackson in April 23, 2010 e-mail informing him that "I know there will be a lawsuit coming on it." (Littlejohn dep p.46, and bate stamped doc

---

[1]Defendant attempts to mislead the court by stating that Armato was not released because he did not have a "host site."  (See Defs. Undisputed Facts paras.66-67)  Armato's sex offense was discharged and was never a consideration of Glenn Jackson in denying his release or his continued incarceration.

1059 attached as **Exh. I**)

34.     Jackson was waiting for legal clarification on the "no MSR" issue from Edward Huntley, and would have waited indefinitely before releasing Armato.  (Jackson dep pp.16-17)

35.     Jackson approved Armatos release on May 21, 2010 in compliance with the 2/18/10 Orders, and instructed Littlejohn to discharge Armato. (Littlejohn dep p.49, and Jackson dep pp.44-45)

36.     Jackson testified that releasing someone without a MSR term violated Illinois state statute. (Jackson dep p.18)

37.     Armato was released on May 21, 2010 <u>without</u> a term of Mandatory Supervised Release. (Littlejohn dep p.13)

38.     Armato was released on May 21, 2010 without an approved host site. (Littlejohn dep pp.21-22)

39.     This was not the first case where Jackson had to deal with a court order that ordered no MSR. (Jackson dep pp.43-44)

**Warden Grounds' involvement in the case:**

40.     On March 9, 2010, Armato submitted an Emergency Grievance form directly to Grounds alleging that he was being held at Robinson beyond his court ordered release date. (Grounds dep pp.9, 14, and see Ground dep Exh. 1)

41.     Grounds summarily denied the grievance based upon his opinion that Armato's situation did not constitute an emergency.   (Grounds dep p.11)

42.     After receiving the grievance, Grounds did not do any investigation into whether Armato's allegations were true on not. (Grounds dep pp.14-15)

43.     On March 17, 2010, Armato filed another Grievance with Grounds, and in denying the grievance Grounds concurred with Grievance Officer Sutton that they were unable to resolve grievance and that a legal opinion would have to be rendered regarding the validity of the judge's sentencing orders.  (See bate stamped 783 attached as **Exh. J**)

44.     Grounds was not sure whether all inmates in February and March of 2010 had to have a term of mandatory supervised release "MSR."  (Grounds dep p.23)

45.     Grounds acknowledged that at no point did Armato have a hearing where he could present evidence in an attempt to gain his release. (Grounds dep p.37)

**Edward Huntley's involvement in the case:**

46.     Huntley testified further that it would not be a good idea for the IDOC to unilaterally disregard Armato's court orders. (Huntley dep p.15)

47.     When a court order is out of the ordinary, the correction facilities followed a process of bringing the matter to Jackson's attention, which was outlined in a training manual. (Huntley dep pp.15-16, 19)

48.     What Jackson did with an out of the ordinary court order after he learned of the orders was not part of any written IDOC policy.  (Huntley dep p.19)

49.     What steps Jackson took thereafter with an out of the ordinary court orders was not found in any IDOC written policy. (Huntley dep p.19)

50.     Huntley was not aware of any time frame that court order disputes had to be, or should have been, resolved by. (Huntley dep pp.20-19)

51.     Huntley had dealt with other court orders that did not require a term of MSR, prior to Armatos. (Huntley dep p.22)

52.    Huntley was not aware of any legal authority that allowed the IDOC to hold a prisoner beyond his out-date when IDOC was concerned about the language in the order. (Huntley dep pp.23-24)

**Dion Dixon's involvement in the case:**

53.    Dion Dixon, violated Armato's parole on February 26, 2010, because Armato did not have a host site.  (See bate stamped 827-828, attached as **Exh.K**)

54.    On April 7, 2010, the Prisoner Review Board, entered an Order finding that Armato was not a parole violator.  (Attached as Plaintiff's **Exh. L**)

55.    Dixon, violated Armatos parole on April 29, 2010, because Armato did not have a host site. (See bate stamped 791-792, attached as **Exh. M** )

**E-mails between Littlejohn, Jackson and Huntley:**

56.    Beginning on September 24, 2009 and through October 2009, Littlejohn informed Jackson that she could not properly calculate Armatos time served credits based on her records. (See e-mails as Plaintiff's **Group Exh. N**)(Littlejohn dep p.34)

57.    On February 22, 2010, Littlejohn again began e-mailing Jackson regarding Armatos.  The first e-mail informed Jackson, that based on the new orders, obtained by Armatos, they should have released Armatos in August 2009.  (See **Exh. N,** bate stamped 1063)(Littlejohn dep p.   )

58.    The e-mails continue between Littlejohn and Jackson until May 21, 2010.  (**Exh. N**)  There is no dispute that the e-mails attached were exchanged between the defendants.

59.    On February 22, 2010, Jackson started copying Huntley on some of the emails; there is no dispute that Huntley was aware of the situation and the relevant facts. (**Exh. N,** bate

stamped 1124-1123)

60.     On May 21, 2010, Jackson instructed Littlejohn to discharge Armato.

**Disputed Facts**

61.     Jackson did not know if Warden Grounds had the authority to discharge Armato
without contacting him.  (Jackson dep p.46)

62.     Warden Grounds testified that he was responsible for enforcing all the policies
and procedures at the Robinson Correctional Center.  (Grounds dep p.25)

63.     Grounds  testified further that was the person with the most authority at the
Robinson Correctional Center.  (Grounds dep p.6)

64.     According to Jackson, Edward Huntley's authority to release Armato superceded
his own. (Jackson dep p.49)

65.     As an attorney for the Illinois Department of Corrections, Huntley testified that he
was merely providing Glenn Jackson with legal advice on Armato's orders, and that Jackson
could have made the decision regarding Armato without consulting him. (Huntley dep p.10, 27)

66.     Defendants, at paragraphs 30, 31, 31, and 32 of their Mem. in Support of the
Motion for Summ. Judgment, provided as Undisputed Fact that Armato was a sex offender, and
that sex offenders were required to wear an electronic monitoring device and required to a host
site while on mandatory supervised release, and this was the reason for his continued
imprisonment.  (See Def's Mem.)

67.     Defendant's Littlejohn, Jackson and Huntley directly refuted that Plaintiff's prior
sex offense had any relevance in their failure to release him, or that Plaintiff needed a host site in
order to be released, when the controlling court orders did not require a MSR term. (Littlejohn

10

dep p.23);(Jackson dep pp.25, 32-34)(Huntley de pp.34-35)

68.     The legislature, in July 2009,  struck the language that provided that "every

sentence shall include as though written therein a term in addition to the term of imprisonment."

The relevant statutory language in effect at the time of the 2/18/10 orders merely provided that

"Subject to earlier termination under Section 3-3-8, the parole or mandatory supervised release

term shall be as follows:" 730 ILCS 5/5-8-1(d) (Attached as Plaintiff's **Exh O** is the relevant

portions of P.A. 95-1052 (S.B.100))  This language was effective on July 1, 2009.

*Id.*

## STANDARD OF REVIEW

"Summary judgment is appropriate when there are no genuine issues of material fact and

judgment as a matter of law is warranted for the moving party." *Gross v. PPG Indus., Inc.*, 636

F.3d 884, 888 (7th Cir.2011 (citing Fed.R.Civ.P. 56(a) and *Anderson v. Liberty Lobby Inc.*, 477

U.S. 242, 255, 106 S. Ct. 2505, 2513–14 (1986)).  The court must examine the record in the light

most favorable to Plaintiff Armatos, and resolving all evidentiary conflicts in his favor and

according him the benefit of all reasonable inferences that may be drawn from the record.

*Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 462 (7th Cir.2010)*, and, McCann v. Iroquois

Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir.2010).  Only if no reasonable trier of fact could find in

Armatos favor should the court grant of summary judgment.  "It is not for courts at summary

judgment to weigh evidence or determine the credibility of [a witness's] testimony; we leave

those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir.2010).

## ARGUMENT

The defendants did not add a term of MSR to Armato's sentence, nor did they file a petition with a court to remedy what they now call a void order, nor did they release Armato. Instead, the defendants chose to continue to imprison Armato without court intervention, without legal authority for his continued imprisonment, and without a procedure for Armato to gain his release. The two appropriate remedies for the defendants in this situation were to release Armato, or to petition a court of proper jurisdiction to hear the facts and determine the appropriate course of action. Contrary to their assertion, the defendants did not exhaust all avenues to correct the sentencing orders. (See Defs Mem. p.15) Defendants remarkably argue on page 16 of their Memorandum that they "took steps to have the Order corrected or amended and compiled with the order after exhausting these avenues to change the order."[2] The defendants have presented no evidence that they took any steps to correct or amend the 2/18/10 orders, or that they filed any type of motion to correct or amend the orders. At best, the evidence suggests that the defendants e-mailed each other for several months about Armato's plight, until May 21, 2010, when they decided to release him consist with the language of the 2/18/10 orders.

The issue is not whether the court orders were void or not, but rather, whether incarcerating Armatos beyond his release date without court intervention violated Armato's constitutional rights.

## I.     THE DEFENDANT'S RESPONSE TO THE AMENDED SENTENCING ORDERS VIOLATED ARMATO'S DUE PROCESS RIGHTS.

There is no legal authority for the proposition that any of the defendants had the right,

---

[2] The next sentence provided by defendant on page 16 of their Memorandum concedes that they did not challenge the 2/18/10 orders.

12

power or authority to continue to incarcerate Armato after his release date.  It has long been held, and established in Illinois, that a convict is imprisoned without due process of law and entitled to his release where he is held in confinement after his sentence has expired.  *People v. Bowen,* 367 Ill. 589, 593 (1937).   Moreover, the power to impose a sentence as a punishment for crime is purely judicial.  *People v. Montana*, 380 Ill. 596, 608 (1942)

What is in dispute here is what were the employees of the IDOC doing in regarding to David Armato?  Did they unilaterally implement a period of MSR for Armato, or did they do nothing for a period of time because that they felt it was appropriate punishment for Armato to remain incarcerated if he was not going to serve a term of MSR.  It should be noted that the defendant has not cited one case that allowed employees of the IDOC to incarcerate inmates for any period beyond the inmate's release date without court intervention and approval.

   a.   <u>The Amended Sentencing Orders of 2/18/10 corrected and remedied the March 2006 Order, and therefore, were not void.</u>

Defendant provided the court with its Exhibit J which is a copy of the 2/18/10 Agreed Order of the Lake County Circuit Court in this matter that specifically made the finding that Armato was not admonished on the record regarding <u>any</u> term of Mandatory Supervised Release. (Attached as Plaintiff's **Exhibit G**)  Michelle Littlejohn, while investigating the February 2010, orders contacted Lake County Assistant State's Attorney Eric Kalata.  (See, **Grp Exh N**, bate stamped 1063)   Littlejohn informed Jackson in an e-mail on February 22, 2010, at 2:13 pm that Kalata said:

> it was the intent of the court. The judge said there was no mention of an msr term given to him previously so that will be no msr tern and they were not clear on the days served so they gave him all this credit.  The judge didn't want him to appeal the case and then have to go through it all over again per ASA.

Consistent with the court Agreed Order and the Littlejohn e-mail, Armato, who has not been deposed in this case, has provided an Affidavit providing that on March 6, 2006, he pled guilty and was sentenced pursuant to a plea agreement. Further, that he was not admonished that if he agreed to the agreed upon sentence that he would have to serve an additional term of MSR. (Armato Affidavit attached as Plaintiff's **Exh. P**)

The Illinois Supreme Court in *People v. Whitfield*, 217 Ill.2d 177, 840 N.E.2d 658 (2005) held that the remedy for a inmate that was not advised of a mandatory supervised release term obligation before entering a guilty plea pursuant to a plea agreement was to modify the sentence to incorporate the MSR in the number of years to which he was sentenced. The Court did not find that the sentencing order was void, but rather modified the order to conform to the situation and the forthcoming constitutional violation that would have occurred with inaction. *Id.*

In *Whitfield*, the defendant was convicted of first-degree murder and armed robbery and plead guilty and was sentenced to 25 years pursuant to a plea agreement. 217 Ill.2d at 179, 840 N.E.2d at 661. At the time of the defendant's plea, the language of 730 ILCS 5/5-8-1(d) provided that "every sentence shall include as though written therein a term in addition to the term of imprisonment." *Id.* However, the defendant in *Whitfield* was not advised that an additional term of three years would be added on to his agreed upon sentence as a term of MSR. *Id.* Sometime while the defendant was in prison he learned that a three year MSR had been added to his 25-year sentence by operation of law; he filed a *pro se* motion for relief *Id.*

The defendant contended that his fourteenth amendment due process rights were violated because an MSR term, about which he was never advised, had been added to his negotiated sentence and resulted in a "more onerous" sentence than the one he had agreed to when he pled

14

guilty. *Id.* Defendant argued that the appropriate relief would be to eliminate the MSR term or reduce his 25-year prison term by the length of the MSR. *Id.*

The *Whitfield* Court found that the defendant's constitutional right to due process and fundamental fairness was violated because he pled guilty in exchange for a specific sentence, but received a different one, more onerous than the one he agreed to. 217 Ill.2d at 189, 840 N.E.2d at 666. When attempting to remedy the violation, the Court reasoned that "adding the statutorily required three-year MSR term to defendant's negotiated 25-year sentence amounts to a unilateral modification and breach of the plea agreement by the State, inconsistent with constitutional concerns of fundamental fairness." 217 Ill.2d at 190-91, 840 N.E.2d at 667. The court remanded the case to the circuit court with directions to impose a sentence of 22 years imprisonment to be followed by a term of 3 years MSR. *Whitfield*, 217 Ill.2d at 205, 840 N.E.2d at 675.

The Court found its ruling in conformity with the Court's earlier decisions and with decisions reached by other jurisdictions. See, *People v. McCoy*, 74 Ill.2d 398, 385 N.E.2d 696 (1979); *People v. O'Toole*, 174 Ill. App. 3d 800, 529 N.E.2d 54 (4th Dist.1988); and, *People v. Moore*, 214 Ill. App. 3d 938, 574 N.E.2d 37 (1st Dist. 1991)

Here, on 2/18/10 the circuit court found that Armato was not admonished in 2006 regarding a term of MSR before entering into his pleas agreement. In an attempt to remedy the situation, the court amended the sentencing orders providing for "no" MSR.[3] Whether the court had the authority to impose such an amended sentence is irrelevant to the issues raised by

---

[3]On April 10, 2009, the Illinois legislature amended the language of 730 ILCS 5/5-8-1(d)(eff. July 1, 2009) striking almost all of the language from (d), and specifically removed the language that allowed a MSR terms to be automatically inserted on to a sentence when a court failed to specifically provide for an MSR term. (P.A.95-1052, attached as Plaintiff's Exhibit O, and only the first page of Act is attached as well as the last 10 pages of the Act containing the relevant amendment.

3:11-cv-03023-RM-BGC  # 24  Filed: 11/09/12  Page 16 of 28

Armatos continued imprisonment by the IDOC employees. The issue is did the defendant, IDOC employees, violate Armato's constitutional rights by their actions or inaction.

The power to impose a sentence as a punishment for crime is purely judicial. *Montana*, *infra*. None of the cases cited by the defendants allow employees of the IDOC to continue to incarcerate inmates beyond their release dates so that they can discuss what to do with the prisoner.

Here, the defendants were presented with three (3) orders that specifically provided for no term of MSR. Armato did not qualify for the added restrictions required for a sex offender. Littlejohn, Jackson and Huntley acknowledge that Armato would have been allowed to walk out of the correctional center without electronic monitoring if they followed the 2/18/10 orders. Jackson and Huntley concede that they were not aware, during the relevant time period, of any legal precedent that allowed them to detain Armato; yet they did. Even after the Prisoner Review Board found that Armato not to be a parole violator, the defendants refused to release him.

The only avenue the defendants could have, and should have, pursued under the circumstances was to petition a court of competent jurisdiction to hear their opposition to releasing Armato. It is outrageous that the defendants unilaterally detained Armato and then argue that he was "provided a `windfall' in that he was not required to serve a term of mandatory supervised release as required by law and that the State of Illinois did not challenge said order." (Def Mem. p.16) Littlejohn and the parole board foresaw that the defendants' actions would result in Armato filing suit. (Littlejohn dep pp.45-46, bate stamp 1059)

At the very least, a genuine issue of material fact exist as to whether the defendants actions or inaction violated Armato's constitution rights. As the court can see, the question of

16

whether the 2/18/10 sentencing orders were void, or voidable, is a red herring when the

defendants unilaterally chose to disregard all orders.

*Assuming arguendo*, that either of Armato's sentencing orders in 2006 or 2010 were

'void," as argued by the defendants; logically then his plea agreement and conviction was "void"

requiring him to plea and be re-sentenced again. *People v. Gregory*, 379 Ill. App. 3d 414, 883

N.E.2d 762 (4th Dist. 2008).  Under the defendants' theory, the only remedy was to seek court

intervention.

If the records employees and the attorney for the IDOC truly believed that the orders were

void, they could not have believed that they unilaterally had the authority to continue to imprison

Armato without going back to a court for further sentencing orders/instructions.  The defendants

would like the court to find that they had the unilateral power and authority to imprison Armato

with impunity while oblivious to the laws regarding sentencing orders and illegal imprisonment.

One of the defendants, Huntley, who was advising Littlejohn and Jackson, was the attorney for

the IDOC; he can't hide behind the argument that he was ignorant of the law, or that he did not

know the only way to resolve the matter was to return to court or release Armato.

## II.   THE DEFENDANTS ARE NOT PROTECTED BY QUALIFIED IMMUNITY IN THIS CIRCUMSTANCE.

Under the doctrine of qualified immunity, "government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).   The Court

applies a two step sequential test for determining whether qualified immunity applies.  The initial

inquiry is whether the facts, taken in the light most favorable to the party asserting the injury,

17

show that the defendants violated a constitutional right or rights. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).

The second sequential step is to ask whether the right was "clearly established" at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in determining whether the right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).

To determine whether a right is clearly established, the court should first look to Supreme Court caselaw, then circuit precedent.  In the absence of controlling precedent, the court may broaden its "survey to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.' " *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir.1989)).  However, the plaintiff need not present a case directly on point in order to defeat qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

   a.   **The facts, taken in the light most favorable to the party asserting the injury, show that the defendants violated a constitutional right or rights.**

Armato has alleged that his Eighth and Fourteenth Amendment rights were violated by the defendants failure to release him from the Robinson Correctional Center as required by the 2/18/10 amended sentencing orders.

18

### i.     Eighth Amendment:

Incarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment prohibition of cruel and unusual punishment when it is the product of deliberate indifference. *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir.2001) (citing *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir.1993); *Sample v. Diecks*, 885 F.2d 1099, 1108–09 (3d Cir.1989); *Haygood v. Younger*, 769 F.2d 1350, 1354–55 (9th Cir.1985). There is no dispute that all of the defendants, perhaps except for Dixon, knew of the amended sentencing orders. The defendants admit that they "did not challenge said order." (Def. Mem. p.16) Finally, there is no dispute that the defendants acted individually, and at times in concert, to keep Armato in prison without legal justification.

### ii.     Fourteenth Amendment and the post -deprivation remedies:

Plaintiff also alleged that the defendants violated his Fourteenth Amendment due process right were violated by their wilful acts and/or inaction that resulted in Armatos continued imprisonment after his release date. Procedural due process claims require a two-step analysis. *Luellen v. City of East Chicago*, 350 F.3d 604, 613 (7th Cir.2003). The first step is to determine whether the plaintiff has been deprived of a protected liberty or property interest; the second step is to determine what process is due. *Id.* In the present case, it is undisputed that plaintiff had a protected liberty interest in being released on his release date and that the defendants deprived him of that interest. See *McKinney v. George*, 726 F.2d 1183, 1189 (7th Cir.1984). Thus, the only question is whether he received due process.

Here, the defendant's post-deprivation remedy did not provide the process that was due Armato to justify his continued imprisonment. *See, People v. Whitfield.* The evidence to date

19

provides that Defendant Grounds summarily denied Armatos grievances without any investigation. (Grounds dep pp.11, 14-15)  Defendants Littlejohn, Jackson and Huntley, merely e-mailed each other regarding the continued deprivation, and Huntley apparently forwarded the information on to the Attorney General's office.  Huntley conceded that the process was ad hoc and was not authorized by any written IDOC  policy. (Huntley dep p.19)  Moreover, Huntley was unaware, at the time of his deposition (9/24/12) of any legal authority that allowed him, or his fellow defendants, to continue to imprison Armato.  (Huntley dep pp.23-24)  Huntley was legal counsel for the IDOC during the relevant time period.

Due process " 'calls for such procedural protection as the particular situation demands.' " *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972)).  (A)t times a procedure employed by the State involves such a probability that prejudice will  result that it is deemed inherently lacking in due process." *Estes v. Texas*, 381 U.S. 532, 542-543, 85 S.Ct. 1628, 1633 (1965). See, *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417 (1963); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157 (1961).

The defendants here, knew, or should have known, that the only reasonable process was to seek court intervention.  They <u>did not</u> mistakenly go to the wrong court or negligently try and seek court intervention.  They wilfully and deliberately chose to not seek court intervention. Their inaction did not constitute a process before imprisoning Armato; they did not have a process.  Armato went months without an answer, all along having his parole violated under the guise of him not having a "host site" to go to.  Armato's due process rights were violated.  There was a remedy to this continuing constitutional violation, the defendants just refused to seek the

remedy.

Meanwhile, Armato followed the prescribed IDOC procedures that were admittedly pointless to gaining his freedom.  The defendants acknowledged that there was nothing Armato could do internally to gain his release.  (Littlejohn dep pp.44-45); (Jackson dep p.17); (Huntley dep pp. 35-36)  The procedure the defendants employed was extremely prejudicial to Armato and inherently lacked due process.

### A.      Defendant's reliance on *Toney-El v. Franzen* is misplaced in this situation.

Defendants argue that plaintiff's procedural due process rights were not violated by the defendants because Armato could have tried additional remedies himself. (Def. Mem. Arg. VI) Defendants did not consider Armato petitioning the Lake County Court and getting amended sentencing orders a sufficient remedy.  Defendants refused to follow the 2/18/10 court orders, but they argue Armato should have sought additional court orders; it is illogical.

The very reason for the instant lawsuit is based on the defendants deliberate disregard of the amended sentencing orders gotten by the plaintiff.  Additionally, plaintiff's constitutional allegations are directed at the defendants conduct; here the defendants are attempting to shift the inquiry to plaintiff's conduct.

In a case similar to the one before this court, the Wisconsin Court of Appeals in *Allen v. Guerrero*, 276 Wis. 2d 679, 695-96, 688 N.W.2d 673, 681 (2004) explained the *Toney-El* opinion in this type of situation:

> The plaintiff's incarceration in *Toney-El* was wrongly extended because of a mistake in computing his mandatory release date, not because corrections officials deliberately refused to release him on a date they knew he was entitled under state law to be released. The Seventh Circuit emphasized in *Toney-El* that the plaintiff "clearly had a constitutionally protected liberty interest in being released from prison before the end of his term for good behavior," *Toney-El*, 777 F.2d at 1226, but it concluded that Illinois

21

corrections officials had provided a "method of reviewing challenges to the calculation of custody or release dates [that] satisfies the dictates of procedural due process." *Id.* at 1229.

The observation in *Toney-El* that a prisoner has no substantive due process right to an early release from prison means only that states are not constitutionally obligated to provide for early release. If a state so provides, however, it was clearly established in 2000 that corrections officials are constitutionally obligated (1) to provide adequate procedures for determining and reviewing the correctness of a prisoner's release date, and (2) to not deliberately incarcerate the prisoner beyond the date mandated under state law for the prisoner's release. *Toney-El* addressed only the first obligation; it did not disavow the second.

This case centers on the second obligation not addressed by *Toney-El*. This case focuses on what actions the defendants took after the plaintiff sought the appropriate remedy.

     **b.**     **It was "clearly established" in 2010 that it was an Eighth and Fourteenth Amendment violation to imprison Armato beyond his release date.**

It was clearly established by 2001 that incarcerating a prisoner beyond the termination of his sentence violated the Eighth Amendment prohibition of cruel and unusual punishment. *See, Campbell,* 256 F.3d at 700; *Haygood,* 769 F.2d at 1354–55. Similarly, the Illinois Supreme Court in 1937 proclaimed that a convict is imprisoned without "due process of law" and entitled to this release where it is made to appear that he is held in confinement after his sentence has expired. *Bowen,* 367 Ill. at 593. *See also, Whitfield,* 217 Ill.2d at 189, 840 N.E.2d at 666.

Therefore, it was clearly established before Armatos imprisonment that the defendants conduct would have violated Armato's constitutional rights by demanding his continued imprisonment.

    **III.**     **THERE IS SUFFICIENT EVIDENCE TO A JURY TO FIND THAT LITTLEJOHN, JACKSON AND HUNTLEY ACTED WITH DELIBERATE INDIFFERENCE.**

This was <u>not</u> a situation where the plaintiff is alleging that the defendants miscalculated

22

his release date.  Rather, the defendants were presented with three court orders with specific instructions that Armato was to be released without a MSR term.  Further, one order specifically provided the court's reasoning for the order, namely, because Armato had not been informed by a prior court that a MSR period was going to be added to his sentence.   All three defendants knew as of February 22, 2010, that based upon the current court orders controlling Armatos release date, he should have been released on August 23, 2009, some 180 days before the 2/18/10 orders were entered.  No defendant contested the August 23rd release date.

"Deliberate indifference" in this case means that the defendants knew that Armato faced the risk of illegal imprisonment, and yet disregarded that risk by failing to take reasonable measures to address the risk.  *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008); *citing, Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *and, Johnson v. Phelan,* 69 F.3d 144, 149 (7th Cir. 1995).

All defendants knew that Armato's amended sentencing orders would have required his immediate release.  No e-mail between Littlejohn, Jackson and Huntley raised the issue whether the amended sentencing orders were "void" or not.   If the defendants believed that the orders were "void" then the only remedy was to seek court intervention to address the orders; that was not done.  The fact that they never sought court intervention begs the question of whether they believed the orders to be "void," and whether their action or inaction was reasonable.

If the defendants did not believe the orders were "void" then there only recourse was to follow the orders and release Armato, and that was not done for 89 days after receiving the orders.  Either way their inaction was not reasonable, especially where the defendant advising the other defendants was an attorney for the IDOC.

23

The defendants have not presented any evidence that any of them had the authority to incarcerate Armato, but they intentionally did, despite Armatos repeated grievances and complaints about the illegal imprisonment.  They intentionally imprisoned him despite the Prisoner Review Board's finding that Armato was not a parole violator.  Following that finding the defendants continued to violate his parole.  Defendants intentionally placed Armato on parole despite the fact the 2/18/10 orders specifically provided that he was not to be on MSR.

The only affirmative steps the defendants took was to e-mail each other about the situation, and presumably, Huntley discussed the matter with some other attorneys.  Those steps were not sufficient to vitiate their wilful and deliberate incarceration of Armato beyond his release date.

Jackson testified that it would have violated state law to have released Armato without an MSR as provided by the orders, but there is not dispute that he and Huntley, on May 21, 2010, conferred and agreed, and then instructed Littlejohn to release Armato without a term of MSR. Certainly, a genuine issue of material fact exists where a state official would knowingly violate state law (releasing Armatos w/out an MSR) and then admit it his deposition.  More likely, neither he, nor the other defendant, ever believed that releasing Armato under these circumstances was a violation of State law.   The defendants have not presented a legitimate reason for detaining Armato in light of the court orders.

## IV.    DEFENDANT GROUND AND DIXON WERE SUFFICIENTLY INVOLVED TO IMPOSE LIABILITY.

To recover damages against state officials in their individual capacity, Armato must show that Grounds and Dixon were personally responsible for the deprivation of his constitutional rights. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) Further, that the defendants

24

engaged in conduct causing Armatos incarceration or knew about the conduct and approved it, facilitated it, condoned it or turned a blind eye to it. *Id., see also, Atkins v. City of Chicago,* 441 F. Supp.2d 921 927 (N.D. Ill. 2006).

Warden Grounds specifically knew of Armato's complaints and situation, and he turned a blind eye to it despite being the highest ranking authority at the prison and responsible for the enforcement of all policies and procedures.  (Ground dep pp. 6, 9, 14, 25) Grounds received two grievances from Armato, post 2/18/10, and summarily denied them both, and conducted no further investigation.  (Ground dep pp. 9,11,14-15)  He facilitated the imprisonment by not even making an inquiry with Littlejohn or Jackson, or conducting any further investigation into the situation.

Dixon was the Supervisor of the Sex Offender Unit according to his Affidavit attached as Defendant's Exhibit I.  On February 22, 2010, Alyssa Williams-Schafer e-mailed Jackson, Huntley and Joel Diers, that Armato's sex offenses had been discharged and did not run consecutively or concurrently with any other offense or parole term. (See Plaintiff's **Grp Exh. N** and bate stamped 1123)   The other defendants relied on this information to determine that Armato did not need a host site if they were to follow the amended sentencing orders. (Littlejohn dep p.23);(Jackson dep pp.25, 32-34)(Huntley de pp.34-35)  However, the Supervisor of the Sex Offender Unit repeatedly violated Armato's parole based upon his failure to have a host site.  (Dixon Affidavit para.3)  Dixon facilitated Armatos continued incarceration.

## CONCLUSION

Based on all of the above, the Defendants' Motion for Summary Judgment should be denied in its entirety.

25

**s/ Dennis J. DeCaro**
DeCaro Illinois Bar Number: 6230675
Kupets & DeCaro, P.C.
77 W. Washington Street, 20 Floor
Chicago, Illinois 60602
Telephone: 312-372-4444
Fax: 312-726-7347
E-mail:ddecaro@kupetsdecaro.com

26

**Plaintiff's Exhibit List**

Exhibit A - Plaintiff's Amended Complaint

Exhibit B - March 6, 2006 two sentencing orders

Exhibit C - Michelle Littlejohn deposition

Exhibit D - Glenn Jackson deposition

Exhibit E - Edward Huntley deposition

Exhibit F - Randy Ground deposition

Exhibit G - February 18, 2010 three amended sentencing orders

Exhibit H - Bate stamped document 1060 - regarding April 8, 2010 e-mail

Exhibit I - Bate stamped document 1059 - regarding April 29, 2010 e-mail

Exhibit J - Bate stamped document 783 - March 17, 2010 Grievance Report

Exhibit K - Bate stamped documents 827-828 - February 23, 2010 Parole Violation Report

Exhibit L - April 7, 2010 Prisoner Review Board Order

Exhibit M - Bate stamped documents 791-792 - April 29, 2010 Parole Violation Report

Exhibit N - Emails between defendants - various bate stamps

Exhibit O - Public Act 95-1052

Exhibit P - David Armato's Affidavit

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| DAVID ARMATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Court No.: 11 cv 3023** |
| | ) | |
| RANDY GROUNDS, MICHELE LITTLEJOHN, | ) | |
| GLENN JACKSON, DION DIXON, and | ) | |
| EDWARD HUNTLEY, all in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## Certificate of Service

I hereby certify that on November 9, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification of such filing to the following: Robert Fanning, and I hereby certify that I have mailed by United State Postal Service the document to the following non-CM/ECF participants: none.

s/ Dennis J. DeCaro

DeCaro Illinois Bar Number: 6230675
Kupets & DeCaro, P.C.
77 W. Washington Street, 20 Floor
Chicago, Illinois 60602
Telephone: 312-372-4444
Fax: 312-726-7347
E-mail:ddecaro@kupetsdecaro.com

28