IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAVID ARMATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-3023 |
| | ) | |
| RANDY GROUNDS, MICHELLE LITTLEJOHN, GLENN JACKSON, DION DIXON, and EDWARD HUNTLEY, all in their individual capacities, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

The Defendants' Motion for Summary Judgment is allowed for the following reasons.

I.

Plaintiff David Armato is a sex offender from the Chicago metropolitan area.[1]

---

[1] *See* Illinois Sex Offender Information Service, http://www.isp.state.il.us/sor/ offenderdetails.cfm (last visited April 26, 2013).  The Court takes judicial notice of this information available to the public.  *See United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008).

1

Armato committed two theft offenses in Lake County, Illinois, in 2005—one on May 7, 2005, and the other on December 30, 2005.  He was convicted of the crimes in two separate cases in the Circuit Court of Lake County (Case Nos. 05 CF 1661 & 05 CF 5015).  On March 6, 2006, Armato was sentenced in each case to ten years imprisonment, to run concurrently.  The sentencing judge did not impose any term of mandatory supervised release, and the judgments from each case state that "it is further ordered that Defendant shall receive credit for time served in the Lake County Jail and while awaiting transport to the Department of Corrections – Defendant shall receive good time credit as administered by the Department of Corrections."

When Armato was processed through the Illinois Department of Corrections' (IDOC) reception center, he was projected to be released on May 9, 2010.  This release date was based on the understanding that Armato had entered custody on May 9, 2005.

In 2007, Armato arrived at Robinson Correctional Center, Robinson, Illinois.  He was awarded good time credit during his time in IDOC, and his projected release date was recalculated.

In September 2009, Defendant Michelle Littlejohn—an office administration specialist and acting records office supervisor at Robinson—began reviewing Armato's paperwork in anticipation of Armato's release date of November 9, 2009.  In doing so, she realized that the information regarding Armato's incarceration at the Lake County Jail was inaccurate, because it reflected that he had been incarcerated continuously since May 9, 2005, but he committed his second theft offense on December 30, 2005.

Littlejohn was unable to obtain complete information regarding jail credit because information had been lost by Lake County.  Based solely on the information contained in the two criminal judgments from Lake County, Littlejohn recalculated Armato's sentence, and determined that his new release date would be September 6, 2010.  Littlejohn informed Armato of these developments, and informed him that further recalculation could occur if the sentencing court issued new sentencing orders detailing the appropriate jail credit applicable.

On February 18, 2010, the Circuit Court of Lake County entered three documents related to Armato.  A handwritten sentencing order was

signed by Circuit Judge Theodore S. Potkonjak.  The handwritten order

was prepared by Assistant Public Defender C.P. Haran, and is captioned

as an "Agreed Order."  In the handwritten order, the caption indicates

that it applies to both of Armato's theft cases—Nos. 05 CF 5015 & 05

CF 1661.  Below is the full text of the handwritten order:

> It is hereby ordered that:
>
> 1) Mr. Armato shall receive credit on 05 CF 5015 & 05 CF 161 [*sic*] for 69 days for time in custody from 12/30/05 (date of offense of 05 CF 5015) through March 6, 2006.  Defendant had not previously received this credit.  (Defendant receives this in addition to original credit for time served[.])
>
> 2) Mr. Armato was not admonished on the record regarding <u>any</u> term of Mandatory Supervised Release.
>
> 3) Mr. Armato's mittimus shall be amended to include the additional 69 days credit in paragraph (1) and <u>NO</u> term of Mandatory Supervised Release.
>
> 4) Mr. Armato shall be released from the Department of Corrections, without a term of MSR, on Friday, May <u>28</u>, 2010.

In addition, the Court entered a new typewritten judgment in each

of Armato's cases, each of which stated the following: "It is further

ordered that [W]ith credit for 373 days served in the Lake County Jail –

credit for time awaiting transport to the Department of Corrections –

good time administered by the Department of Corrections – def to be

4

released from the Department of Corrections without a term of Mandatory Supervised Release."

On February 22, 2010, Littlejohn received materials from the Circuit Court of Lake County, recalculated the sentence, and determined that, with the credits given by the Circuit Court, Armato's release date was August 23, 2009.

Littlejohn was concerned with the Circuit Court's statement that no term of mandatory supervised release (MSR) was imposed. Littlejohn contacted the Assistant State's Attorney who handled the case, and Littlejohn was informed that the Judge had indeed intended that no term of MSR be imposed.

Under Littlejohn's understanding of Illinois penal law, the imposition of MSR in Armato's case was mandatory. Littlejohn raised her concerns regarding Armato with IDOC colleagues, and by the end of February 23, 2010, the following individuals had been made aware of the situation: Defendant Glenn Jackson, Chief Records Officer at IDOC Headquarters; Defendant Edward Huntley, Chief Counsel and Special Litigation Counsel at IDOC Headquarters; another attorney at IDOC

Headquarters; an attorney for Illlinois Prisoner Review board (PRB); and the coordinator for sex offender services at IDOC Headquarters.

It was determined that Armato was not eligible to be civilly committed as a sexually violent person.

The Defendants and other state employees expressed concerns with the sentence imposed by the resentencing judge.  Like Littlejohn, there was a belief that the imposition of MSR was mandatory in Armato's case. An attorney at IDOC headquarters wrote the following in a group email: "The Court in my opinion cannot legally sentence the offender without a term of MSR.  Unless we challenge the order through the AG's office I think we are bound to follow the Order."

However, there were concerns that if Armato was subject to MSR, he could not be released from the institution.  As a sex offender, there are strict conditions associated with being released under MSR.  The principal concern was that he would be subject to electronic monitoring, and, as a consequence, would have to find a suitable host location approved by IDOC.  Efforts were made to find a suitable host location, but they were fruitless.

6

Littlejohn determined that with the credits granted on the two typewritten judgments entered February 18, 2010, Armato's release date was August 23, 2009, and as a result was subject to release.[2]  However, the officials determined that Armato was subject to MSR by operation of law, notwithstanding the order entered by the sentencing judge.  They further determined that although Armato was subject to release, he could not be released because he did not have a suitable host location.

Jackson informed Littlejohn that the appropriate course was to technically release Armato, but to "violate him at the door."[3]

On February 23, 2010, Armato was violated at the door for failing to secure an appropriate host site for electronic monitoring.  Defendant Dion Dixon, Supervisor of the Sex Offender Unit, Parole Division, Robinson Correctional Center, prepared the violation report and notice

---

[2]  It is unclear from the record when IDOC officials received the handwritten order with a date certain for release (May 28, 2010).  It is also unclear whether IDOC officials relied upon this order during early 2010 while making decisions regarding Armato's release.

[3]  Violating an offender at the door is a legal fiction wherein it is imagined that the offender is released from custody, placed on MSR, but when he leaves the institution he is in violation of his supervision terms and he is immediately placed back in custody.  In reality, the offender simply remains incarcerated until a MSR prerequisite is satisfied.  This can continue until either (1) the term of MSR expires, or (2) the prerequisite is satisfied.  For more discussion on this predicament, *see* *Neville v. Ryker*, No. 08 C 4458, 2009 WL 230524 (N.D. Ill. Jan. 30, 2009).

of charges regarding Armato.  However, Dixon was not aware that no term of MSR had been imposed by the Circuit Court of Lake County.

Attorneys for IDOC referred the matter to the Office of the Attorney General, so that the sentencing orders could be challenged and eventually amended to provide a term of MSR.  Huntley had a number of conversations with the Office, trying to persuade them to pursue relief on behalf of IDOC.[4]  The Office of the Attorney General did not immediately make a decision regarding getting involved in the case.

On March 9, 2010, Armato submitted an emergency grievance regarding his continued detention.  The emergency grievance was reviewed by Defendant Randy Grounds, Warden of Robinson Correctional Center.  Emergency grievances are reviewed by the Warden, but are limited to situations involving health, injuries, or medical treatment.  Grounds determined that Armato's grievance was not an emergency, and denied the grievance.  Armato was authorized to pursue a regular grievance through normal channels.

---

[4]  The Office of the Attorney General represents IDOC in state criminal court proceedings.  *See* 15 ILCS 205/4.

Armato filed a regular grievance later in March 2010. The grievance officer stated that the issue could not be resolved at the institutional level, and that a decision would have to be resolved by IDOC's Administrative Review Board. Grounds concurred in the grievance officer's recommendation.

In April 2010, Armato had a hearing before the Prisoner Review Board, and the Board determined that Armato had not violated MSR. However, IDOC officials again violated Armato at the door in late April, keeping him in custody.

During the spring of 2010, IDOC employees were waiting to hear whether the Office of the Attorney General was going to pursue the MSR issue in the Circuit Court of Lake County.

On May 21, 2010, Huntley sent the following email to Jackson:

> Glenn, the AG's Office has declined to pursue a request to the court that the sentencing orders be modified or otherwise move for leave to intervene on behalf of the Department in this case. That being so, I believe we have exhausted the potential alternatives and will have to let Armato go as a discharge. I suppose we should show it as a court-ordered discharge as that is exactly what it is. Let me know if you need anything further. Thanks.

Armato was released on May 21, 2010, without a term of MSR.

II.

This action was initiated on January 24, 2011.  The action was

brought under 42 U.S.C. § 1983, and the Plaintiff alleged that his rights

under the Eighth and Fourteenth Amendments to the Constitution were

violated.  In addition, he brought an Illinois state law claim of false

imprisonment under the Court's supplemental jurisdiction.  *See* 28

U.S.C. § 1367.

Following a recusal, the case was reassigned to the undersigned on

May 26, 2011.  Discovery commenced a short time later.

On October 16, 2012, the Defendants filed a Motion for Summary

Judgment and a Memorandum of Law in Support

The Plaintiff filed a Memorandum in Opposition on November 9,

2012, and the Defendants filed a Reply on November 26, 2012.

The Court denied the Plaintiff's Motion for Leave to File a Sur-

Reply.[5]

---

[5]  In the Motion for Leave to File a Sur-Reply, the Plaintiff argued that the
Defendants had raised an argument for the first time in their Reply and that the
Defendants had filed exhibits that had not been disclosed in discovery.  After the
Motion was fully briefed, the Plaintiff acknowledged that the argument had, in fact,
been raised first in the Memorandum of Law in Support of the Motion for Summary

10

III.

"Summary judgment is appropriate when the evidence submitted, viewed in the light most favorable to the non-moving party, shows 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (quoting Fed. R. Civ. P. 56(c) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In order to survive summary judgment, there must be sufficient evidence that a reasonable factfinder could return a verdict for the nonmoving party. *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009).

"[A] motion for summary judgment requires the responding party to come forward with the evidence that it has—it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (quotation marks omitted). Although inferences are drawn in favor of the nonmoving party, inferences relying on speculation or

---

Judgment and that the document had actually been produced by the Plaintiff as part of his Rule 26 disclosures.

11

conjecture are insufficient.  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

IV.

As an initial matter, Armato's claims must fail on the merits, because IDOC complied with the handwritten order entered on February 18, 2010.

The assistant public defender prepared an agreed order, which was signed by the judge, stating that "Mr. Armato shall be released from the Department of Corrections, without a term of MSR, on Friday, May 28, 2010."

Armato was released one week early, on May 21, 2010, and upon his release, he was not subject to a term of MSR.

The handwritten order gave a date certain, and IDOC fully complied with its terms.

It is little consequence that on the same date the Circuit Court of Lake County also entered two judgments which, after IDOC conducted sentencing computations, resulted in a 2009 release date.  Those two judgments were at all times subject to the voodoo of sentence calculation.

On February 18, 2010, the judge, the prosecutor, and the public defender were only absolutely certain of one thing—that Armato was to be released on May 28, 2010.  Armato was released a week early.

Therefore, it does not appear a rational jury could find in Armato's favor.

V.

In the alternative, even if the handwritten order had never existed, the Defendants are still entitled to summary judgment.

In order to prevail on his Eighth Amendment claim, Armato would need to demonstrate that the Defendants allowed him to be held beyond the term of his incarceration, without penological justification, as a result of their deliberate indifference.  *See Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001).

No rational jury could reach such a result.

As a preliminary matter, the Court need not decide whether any of the orders entered by the Circuit Court of Lake County were void. Instead, the Court finds that state employees had a colorable belief that they were void, with respect to the failure to impose a term of MSR.

Given that belief, which was apparently sincerely held, the Defendants found themselves in a bind.  Armato has repeatedly formulated the choice facing the Defendants: "The two appropriate remedies for the defendants in this situation were to release Armato, or to petition a court of proper jurisdiction to hear the facts and determine the appropriate course of action."

As detailed above, IDOC relies on the Office of the Attorney General to represent them in these matters.  Huntley testified that he had several conversations with employees in the Office of the Attorney General, trying to persuade them to take up the issue with the Circuit Court of Lake County.[6]  In the end, the Office of the Attorney General declined to pursue the matter.  Armato was released on the same day that the supervisor of the Prisoner Litigation Unit of the Office of the Attorney General told Huntley telephonically that the Office would not pursue the matter.

It is apparent from the entirety of the record that the Defendants sought to have the Office of the Attorney General take up their cause in

---

[6]  In a similar fashion, Littlejohn was pressuring Jackson, who in turn was pressuring Huntley.

14

court and, when that failed, they immediately complied with the order of the court.  Armato's arguments that the Defendants "willfully and deliberately chose not to seek court intervention" is not accurate.

## VI.

The Court concludes, in any event, that the Defendants are entitled to qualified immunity.

> Qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  In determining qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right and (2) whether that constitutional right was clearly established at the time of the alleged violation.  Courts may exercise discretion in deciding which question to address first.

*Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013) (quotation marks and citations omitted).

The Court has already concluded that no violation occurred.  Even if the acts of the Defendants did technically violate Armato's constitutional rights, the Defendants are immune because reasonable state employees in their respective situations would not have clearly known that they were violating constitutional rights.  *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).  While it was apparent even in

15

early 2010 that this lawsuit was coming, it would not have been clear that any constitutional violation was occurring.

## VII.

Defendants Grounds and Dixon were not sufficiently involved to be liable under Section 1983.

As Warden, Defendant Grounds was the person with the most authority at Robinson Correctional Center, and he did oversee the day-to-day operation of the facility.  However, he was not involved in the calculations of prisoner release dates or related release decisions.  It is telling that Littlejohn contacted Jackson when problems arose regarding Armato, not Grounds.  Grounds' involvement was limited to grievance issues.  The Court concludes that Grounds was not sufficiently involved to be liable.

Dixon made no decisions regarding violating Armato's parole.  He only made a determination that no acceptable host site could be found for electronic home monitoring.  Accordingly, the Court finds that Dixon was not sufficiently involved to be liable.

16

VIII.

The Court concludes that Armato's due process claims fail as a matter of law.

"Due process calls for such procedural protection as the particular situation demands. . . . The fundamental requirement of due process is a meaningful hearing at a meaningful time." *Toney-El v. Franzen*, 777 F.2d 1224, 1227-28 (quotation marks and citations omitted).

In this case, Armato had remedies available in the courts of the State of Illinois, including habeas corpus, mandamus, and a claim of false imprisonment. The U.S. Court of Appeals for the Seventh Circuit has held that these kinds of remedies provide sufficient due process for a prisoner in Armato's situation. *See id.* at 1228.

IX.

Aramto's state law false imprisonment claim fails as a matter of law.

The Eleventh Amendment, as interpreted by the U.S. Supreme Court, protects the states from suits against them in federal court which are brought by their citizens. *See* U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890). While the Eleventh Amendment does not

shield state employees from tort claims, federal courts must look to state immunity rules regarding state law causes of action. *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996).

In Illinois, there has been a limited waiver of sovereign immunity, with respect to claims for money damages: "The [Court of Claims] shall have exclusive jurisdiction to hear and determine the following matters: All claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency . . ." 705 ILCS 505/8(a).

Under Illinois law, certain claims brought against state employees are deemed to actually be claims against the State, and must be brought only in the Illinois Court of Claims. *See Healy v. Vaupel*, 133 Ill. 2d 295, 309 (1990). The action must be brought in the Court of Claims "when there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of action involve matters ordinarily within that employee's

normal and official functions of the State." *Id.* (quotation marks omitted).

The Court concludes that, under Illinois law, the claim is really against the State of Illinois, and can only be brought in the Illinois Court of Claims. Thus, the claim cannot be heard in this Court.

## X.

Armato's claims must fail because he cannot establish that he was incarcerated for longer than necessary. According to an agreed order drafted by his attorney, and signed by the judge, he was to be released on May 28, 2010. He was released on May 21, 2010. The order that gave a date certain was followed.

Even ignoring that agreed order, his claims still fail.

*Ergo*, the Defendants' Motion for Summary Judgment is ALLOWED. Judgment is hereby entered in favor of Defendants Grounds, Littlejohn, Jackson, Dixon, and Huntley, and against Plaintiff Armato. The Clerk is directed to prepare a written judgment.

CASE CLOSED.

IT IS SO ORDERED.

ENTER: May 1, 2013

FOR THE COURT:                    */s/ Richard Mills*
                                  _____
                                  Richard Mills
                                  United States District Judge